In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00136-CR


______________________________




CORBETT SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 163rd Judicial District Court


Orange County, Texas


Trial Court No. B 000038-R




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross


Dissenting Opinion by Chief Justice Cornelius


O P I N I O N



 A jury convicted Corbett Smith of indecency with a child by exposure. Tex. Pen.
Code Ann. § 21.11(a)(2) (Vernon Supp. 2001). The trial court assessed his punishment
at fifty years in prison. (1), (2) On appeal, Smith challenges the legal and factual sufficiency of
the evidence to support his conviction, and asserts that his trial counsel rendered
ineffective assistance. Because we find the evidence was factually insufficient, we reverse
the judgment of the trial court and remand for a new trial.

 The evidence shows that on the afternoon of February 10, 1996, M.T., then ten
years old, and G.R., then eight years old, were playing and skating on a long porch that ran
in front of Smith's apartment and several other apartments. Smith left the door to his
apartment open for illumination. (3) At some point, while M.T. and G.R. were playing in front
of Smith's apartment, Smith exposed his penis to them. Both M.T. and G.R. recounted
similar stories to their fathers regarding the exposure. The fathers later discussed the
situation between themselves and decided to contact the police and file an offense report. 
The reported offense was investigated by Officer Michael Bean and supervised by
Lieutenant Joseph Hargrave, both of the Bridge City Police Department. During the course
of his investigation, Bean interviewed M.T. and her parents, but he did not discuss the
reported offense with either G.R. or his parents. Smith went to the police station
voluntarily, where he was interviewed by both Bean and Hargrave (4) and eventually was
charged with indecency with a child by exposure.

 In reviewing the legal sufficiency of the evidence, we review the evidence in the light
most favorable to the verdict and ask whether any rational trier of fact could have found
that the essential elements of the offense were established beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); Teer
v. State, 923 S.W.2d 11, 17 (Tex. Crim. App. 1996). In this type of review, the jury remains
the exclusive judge of the credibility of the witnesses and the weight to be given their
testimonies, and may resolve conflicts in the testimonies as it sees fit. Barnes v. State,
876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Hayden v. State, 13 S.W.3d 69, 72 (Tex.
App.-Texarkana 2000, pet. granted).

 In reviewing the factual sufficiency of the evidence, we view all of the evidence
without the prism of "in the light most favorable to the prosecution" and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). When
conducting this review, we are authorized to disagree with the jury's determination, but we 
must be appropriately deferential to its verdict, and we must avoid substituting our own
judgment for the jury's. Id. at 133.

 Section 21.11 of the Texas Penal Code states in pertinent part:

 (a) A person commits an offense if, with a child younger than 17
years and not his spouse, whether the child is of the same or opposite sex,
he:

 . . . .

 

 (2) . . . exposes . . . any part of his genitals, knowing the
child is present, with intent to arouse or gratify the sexual desire of any
person.

 

Tex. Pen. Code Ann. § 21.11(a)(2). An essential element of the offense of indecency with
a child is the mental state that accompanies the forbidden conduct: the specific intent to
arouse or gratify the sexual desire of any person. Claycomb v. State, 988 S.W.2d 922, 925
(Tex. App.-Texarkana 1999, pet. ref'd). The intent to arouse or gratify the sexual desire
of any person may be inferred from the defendant's conduct, his remarks, and all
surrounding circumstances. Id.

 The State alleged in its indictment that Smith exposed his genitals, knowing G.R.,
a child younger than seventeen years and not his spouse, was present, with the intent to
arouse and gratify his sexual desire. In a criminal proceeding, the state is required to
prove beyond a reasonable doubt the essential elements of the offense and the specific
details charged in the indictment if the details are descriptive of any essential element. 
See Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2001); Weaver v. State, 551
S.W.2d 419, 420-21 (Tex. Crim. App. 1977).

 Smith contends the evidence is both legally and factually insufficient to support the
finding that he (1) exposed himself to G.R. (2) for the purpose of sexually gratifying himself. 
However, viewing this evidence in the light most favorable to the verdict, as we must, we
find these elements may be inferred from the circumstances shown by the evidence. 

 Viewing the evidence in the light most favorable to the verdict, we believe a rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. The testimonies given by G.R. and M.T. were clearly believed by the jury, and
Smith's intent could have been inferred from G.R.'s testimony that Smith unzipped his
pants when he exposed himself to them. Accordingly, we find the evidence legally
sufficient.

 However, when we view the evidence without the prism of "in the light most
favorable to the prosecution," deciding whether the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust is more
problematic. Smith contends the evidence is factually insufficient because of various
inconsistencies between G.R.'s and M.T.'s testimonies. G.R. testified that at the time
Smith exposed himself, he was wearing a pair of slacks which he had unzipped and was
not wearing a shirt. M.T., on the other hand, testified that before exposing himself to her
and G.R., Smith was completely unclothed from the waist down and the only article of
clothing Smith was wearing was a T-shirt. G.R. testified that Smith was inside his
apartment, coming out of his restroom, when he exposed himself. M.T. testified that Smith
was standing in the front door of his apartment when he exposed himself and that she did
not see him near his restroom. G.R. testified he and M.T. had been conversing with Smith
before the incident occurred. M.T. testified she did not remember having any
conversations with Smith on that day.

 We are well aware that in a trial by jury, reconciliation of conflicts and contradictions
in the evidence is within the province of the jury, and such conflicts will not require a
reversal as long as there is enough credible testimony to support the conviction. Bowden
v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Hayden, 13 S.W.3d at 73-74; see
Butler v. State, 890 S.W.2d 951, 953 (Tex. App.-Waco 1995, pet. ref'd). However, the
conflicts and contradictions contained in the accounts of the offense given by the State's
two eyewitnesses are not minor or of incidental matters. The two divergent accounts are
difficult to explain. It appears that by combining G.R.'s and M.T.'s testimonies, Smith was
either completely clothed or completely naked. At the time of the exposure, Smith was
either inside his apartment, coming from his restroom, or he was standing in his front door. 
These are not insignificant details, because they have to do with important facts about how
Smith allegedly exposed himself to these children. They are important details, integral to
both the mens rea and actus reus of the offense of indecency with a child by exposure. 

 Finding factually sufficient evidence to show Smith's intent to gratify his sexual
desire presents an even greater challenge. In similar cases, the evidence found sufficient
to show an appellant's intent to arouse or gratify sexual desire has been considerably more
than we have in this case. In Claycomb, the evidence showed Claycomb was in a public
place, a shopping mall, close to an exit where people frequently walk, with his penis
exposed. He made eye contact with the victim and followed her with his eyes, his penis
was erect, he made no effort to cover himself, and his hand was moving over his penis. 
Claycomb, 988 S.W.2d at 923-24. More recently, in Hayden, this Court sustained a
conviction for indecency with a child by exposure where evidence was adduced that
Hayden exposed himself in his living room to a child, as well as committed various other
sexual acts such as forcing the child and her friend to undress and spread their legs for
him, forcing the child and her brother to watch pornographic films, and fondling the child
while checking to see if she had wet her bed. Hayden, 13 S.W.3d at 74. In Gregory v.
State, Nos. 14-99-1125-CR through 14-99-1128-CR, 2001 Tex. App. LEXIS 4519, at *1-2
(Tex. App.-Houston [14th Dist.] July 5, 2001, no pet. h.), the victims observed Gregory's
exposed penis while they were inside his house. When the girls called the matter to his
attention, Gregory pulled his penis out further. He also told the girls not to reveal the
events to anyone. In Turner v. State, 600 S.W.2d 927, 931 (Tex. Crim. App. [Panel Op.]
1980), Turner "played with himself," and smiled and laughed at his victim's reaction to his
exposure. In this case, there is no evidence that Smith was touching himself or gesturing
in any way during his alleged exposure. Neither is there evidence that he said anything to
the children or had any kind of expression on his face suggesting he had an intent to
arouse or gratify his sexual desires. 

 The dissent, while admitting there is no direct, specific evidence of Smith's intent,
contends G.R.'s testimony that Smith's penis was somewhat erect is evidence of Smith's
intent. However, G.R.'s precise testimony in this regard was as follows:

 [Prosecuting attorney]: . . . Do you know what condition his penis
was in? Meaning was it laying all the way down or was it something other?


 [G.R.]: It wasn't sticking all the way up, but it wasn't laying
down.


 The dissent further states that the fact Smith made eye contact with the victim is one
circumstance raising an inference that he intended to gratify his sexual desire, citing
Claycomb, 988 S.W.2d 922. However, there is no evidence Smith made eye contact with
either of the children in this case. Eye contact as defined by Merriam Webster's
Collegiate Dictionary 414 (10th ed. 1993) means visual contact with another's eyes. 
The precise testimony is as follows:

 [Prosecuting attorney]: Where was he [Smith] looking?


 [G.R.]: At me and [M.T.]. 


 . . . .


 [Prosecuting attorney]: And what was the expression on his face
while he was looking at you holding the flaps of his pants and his penis is
exposed?


 [G.R.]: Just like he is now, I'm sure.


 [Prosecuting attorney]: Was it a scowl, or an angry look, or a
surprised look?


 [G.R.]: No, sir.


 [Prosecuting attorney]: It was just kind of a dead stare?


 [G.R.]: Yes, sir.


 . . . .


 [Prosecuting attorney]: Do you know if he was facing you at the
time, like looking at you, or was he looking away?


 [M.T.]: He was looking at me.


 [Prosecuting attorney]: . . . And what kind of expression did he
have on his face, do you remember?


 [M.T.]: I don't remember.


 The fact that a person is looking at another does not mean they have eye contact,
which clearly means looking the person in the eye. In Claycomb, cited by the dissent,
Claycomb made eye contact with his victim and, as already noted, followed her with his
eyes. There is no evidence of eye contact in this case.

 Although we are cognizant that the statute at issue, by its plain language, does not
require the state to demonstrate the exposing party intended to gratify his own sexual
desires but rather the desires of any person, (5) here the State specifically alleged Smith
intended to gratify his sexual desires. As discussed above, the State is required to prove
beyond a reasonable doubt the essential elements of a crime and the specific details
charged in the indictment if the details are descriptive of any essential element. Here, the
detail that Smith sought to gratify himself is descriptive of the essential element of "with the
intent to sexually gratify any person." 

 Accordingly, we are charged with reviewing whether sufficient evidence was
adduced at trial to support the jury's findings. After a thorough review of all the evidence
in a neutral light, we hold that the jury's verdict is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. See Clewis, 922 S.W.2d at 129.

 In light of the dispositive nature of the sufficiency point of error, we need not address
Smith's ineffective assistance of counsel claim.

 For the reasons stated, we reverse the judgment of the trial court and remand for
further proceedings.


 Donald R. Ross

 Justice




DISSENTING OPINION



 I believe the evidence is factually sufficient to support the verdict. The majority
opinion finds that the evidence is factually insufficient mainly because of various
inconsistencies between M.T.'s and G.R.'s testimonies. Although the majority points to
these inconsistencies as rendering the evidence factually insufficient, it really is finding the
testimonies of those victims incredible. Such a finding is improper for an appellate court. 
The jury is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. This rule is a salient one that has long been recognized. It is based on the fact
that the jury, having seen and heard the witnesses in person, is better able to judge their
credibility than an appellate court from a "cold record." 

 Despite the testimonial inconsistencies on nonessential details, the children's
positive testimonies on the essential fact that Smith exposed his penis to them while
looking at them is remarkably consistent. Moreover, the reconciliation of conflicts and
contradictions in the testimony is within the exclusive province of the jury, and such
conflicts will not require a reversal as long as there is enough credible testimony to support
the conviction. Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Hayden
v. State, 13 S.W.3d 69, 73 (Tex. App.-Texarkana 2000, no pet.); Butler v. State, 890
S.W.2d 951, 953 (Tex. App.-Waco 1995, pet. ref'd). This is especially true when we
consider that a shocking and startling event such as the exposure of an adult's genitals is
calculated to inhibit anyone's, especially a child's, ability to accurately recount minor details
of the event.

 As to Smith's intent to gratify his sexual desire, there is no direct, specific evidence
of his intent. However, there are several circumstances that raise a reasonable inference
that he did the exposure to gratify himself. First, G.R. testified that he clearly saw Smith's
penis and that it was somewhat erect. The majority takes me to task for paraphrasing the
testimony this way, but it seems to me that if Smith's penis "wasn't sticking all the way up,
but it wasn't laying down," it was semi-erect. Second, both children testified that Smith
looked at them when he was exposing his penis to them. The fact that the accused made
eye contact with the victim is one circumstance raising an inference that he intended to
gratify his sexual desire. See Claycomb v. State, 988 S.W.2d 922 (Tex. App.-Texarkana
1999, pet. ref'd). Although looking at one another might not technically be "eye contact"
unless the persons literally looked at each other's eyes, I believe evidence that the
perpetrator looked at the victim while exposing his sexual organ raises an inference that
the person was exposing himself to gratify either his or the victim's sexual desire. Third,
there was considerable evidence from adults who were at the apartment complex from time
to time that Smith always showed up where children gathered to play and that he
"constantly hung around" children in the apartment complex. The witnesses found this
conduct on Smith's part "odd." Additionally, and more importantly, Smith voluntarily gave
Officer Joseph Hargrave a noncustodial interview, and in his statement he never
contended that his exposure to the children was an accident or was innocent. Instead, he
at first maintained that he was not at the apartment at all when the event occurred. 
Hargrave testified, "[H]e denied it at first. He denied being at the location where the
offense occurred, at first." Hargrave later gave this report about Smith's statement: "So,
at this point, you know, we've gone from, 'I wasn't there,' to 'Well, I was there and I
changed clothes'; to 'Well, she may have seen me by looking through the window,' to 'Well,
she might have seen me with the door open'. So there is [sic] a lot of inconsistencies in
the information that I'm getting from Mr. Smith." But Smith steadfastly contended that he
did not make any exposure at all. There was no objection to any of this testimony. Indeed,
Smith's counsel contends in his brief that the only factual issue in this case is whether
Smith exposed himself to the children. There is no contention that the exposure may have
occurred but was not done to gratify Smith's sexual desire. Considering all the facts and
circumstances, I conclude that the evidence is factually sufficient to support the verdict. 
Thus, I would affirm the conviction.


 William J. Cornelius

 Chief Justice


Date Submitted: August 30, 2001

Date Decided: October 24, 2001


Do Not Publish


1. Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp. 2001) (habitual offender statute).
2. During the punishment phase, Smith pled true to the enhancement paragraphs
alleging two previous felony convictions. In addition, the State produced evidence that
Smith had been previously convicted of two misdemeanor offenses. A community
supervision officer testified that all of these offenses were against children. 
3. The record indicates the electricity in Smith's apartment may not have been
working.
4. Smith had previously been given his Miranda warnings. See Miranda v. Arizona,
384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
5. See Asemota v. State, 996 S.W.2d 322, 323-24 (Tex. App.-Houston [14th Dist.]
1999, no pet.) (court reviewed Tex. Pen. Code Ann. § 21.08 (Vernon 1994), indecent
exposure, and held that statute does not require appellant to intend that his exposure to
the other party result in his sexual gratification).